UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JUAN MATEO,

                              Plaintiff,

        -against-

EQUIFAX INFORMATION SERVICES LLC,
BANK OF AMERICA, N.A., and COMENITY
BANK,

                           Defendants.
-----------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
22-cv-03560 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this consumer protection litigation, on referral from the Honorable Joan M. Azrack for Report and Recommendation, are Plaintiff Juan Mateo's ("Plaintiff" or "Mateo") and Defendant Bank of America, N.A.'s ("Defendant" or "BANA") cross-motions for summary judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure ("Fed. R. Civ. P."). *See* Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion" or "Pl. Mot."), Docket Entry ("DE") [47]; Defendant's Motion for Summary Judgment ("Defendant's Motion" or "Def. Mot."), DE [50]. By way of Complaint dated June 16, 2022, Plaintiff commenced this action against Defendants BANA, Equifax Information Services LLC ("Equifax") and Comenity Bank ("Comenity, collectively "Defendants"),[1] asserting claims of willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

---

[1] On November 10, 2022 and November 18, 2022 respectively, Judge Azrack dismissed Equifax and Comenity as parties pursuant to stipulations of dismissal. *See* DEs [29] – [30]; Order Dismissing Parties dated Nov. 10, 2022; Order Dismissing Parties dated Nov. 18, 2022.

("FRCA").  *See* Complaint ("Compl."), DE [1].  For the reasons set forth below, the Court concludes that Plaintiff's FCRA claims fail as a matter of law because:  (1) Defendant furnished accurate information to the credit reporting agencies ("CRAs"); (2) Mateo has failed to offer proof of actual damages; and (3) Plaintiff lacks standing to pursue a claim for willful violation of the FCRA.  The Court therefore respectfully recommends that Plaintiff's Motion be denied, Defendant's Motion be granted, and Mateo's claims be dismissed.

## I.    BACKGROUND

### A. Facts

The following facts are taken from the pleadings, affidavits, exhibits, and the parties' Local Civil Rule 56.1(a) statements.  Unless otherwise noted, these facts are not in dispute.

#### 1.  Plaintiff's BANA Account Prior to Bankruptcy

Defendant BANA is a provider of consumer credit cards with a principal place of business in Charlotte, North Carolina.  *See* Defendant's Statement of Undisputed Material Facts ("Def. 56.1"), DE [51], ¶ 1.  On November 20, 2017, Plaintiff opened a consumer credit card account ending in 6925 with BANA (the "Account").  Def. 56.1 ¶ 2.  Mateo carried a balance on the Account and made payments until approximately March 2019.  *Id.* ¶ 3.  On or around April 10, 2019, Plaintiff raised a fraud dispute regarding the Account.  *See id.*  After 2019, Mateo made no further payments on the Account, which was closed on or around July 27, 2019.  *Id.* ¶¶ 3-4.

On or about July 31, 2019, Defendant wrote off the Account as bad debt for the purposes of profits and losses, which had an outstanding balance of $566.91.  *See id.*

¶ 5.  According to BANA, it reported the Account's status to the CRAs as code "97: Unpaid balance reported as a loss (charge-off)" and complied with reporting the base segment fields as reflected in the Metro 2 2022 Credit Reporting Resource Guide ("Metro 2 Guide").  *Id.* ¶ 6; *see* Def. 56.1, Ex. G, BANA_Mateo 0366.

Plaintiff sent TransUnion, a CRA, a credit dispute letter on or around October 16, 2020, claiming that the Account was "not [his], [he] never had an account with this company."  Def. 56.1 ¶ 7.  On November 13, 2020, Defendant responded to an Automated Consumer Dispute Verification ("ACDV") request from TransUnion in connection with the Account, which contained a dispute code of "001: 'Not his/hers'".  *Id.* ¶¶ 9-10.  BANA received additional ACDV requests regarding the Account  from CRAs in connection with disputes filed by Plaintiff on November 17, 2020, November 29, 2020, December 9, 2020, December 20, 2020, December 21, 2020, January 30, 2021, February 5, 2021 and February 6, 2021.  *Id.* ¶ 14.  In response to each ACDV request, BANA indicated that the Account was charged off and closed and that there were no upcoming payments owed on the Account.  *Id.* ¶ 15.  In further response to these disputes, Defendant conducted an investigation and concluded that it was accurately reporting the Account.  *Id.* ¶ 16.

2.  Plaintiff Files for Bankruptcy

Plaintiff filed for Chapter 7 Bankruptcy on February 8, 2021 in the United States Bankruptcy Court for the Southern District of New York, Case No. 21-10247-scc (the "Petition").  Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion ("Pl. 56.1"), DE [48], ¶ 1.  Mateo's BANA Account was included in

3

the Petition.[2]  *Id.* ¶ 3.  Defendant received notice of the Petition on February 9, 2021.
*See id.* ¶ 4; Def. 56.1 ¶ 17.  In the Petition, the Account is listed as a nonpriority
unsecured claim and BANA is listed among Plaintiff's creditors.  *See* Pl. 56.1 ¶¶ 5-6.
Defendant did not intervene in the bankruptcy action to assert or preserve a claim.
*Id.* ¶ 10.

On May 12, 2021, Mateo received an Order of Discharge from the Bankruptcy
Court.  *Id.* ¶ 7.  BANA was notified that Plaintiff's bankruptcy case was discharged
on May 16, 2021.  Def. 56.1 ¶ 18.  Mateo never reaffirmed the debt associated with
the Account prior to the Order of Discharge, and Defendant was aware of this fact.
*See* Pl. 56.1 ¶¶ 11-12.  Therefore, as a result of the Order of Discharge, the Account
was discharged.  *Id.* ¶ 13.  The Bankruptcy Court explained to Plaintiff that he did
not have to pay any of the creditors listed in the Petition.  *Id.* ¶ 15.

### 3.  BANA's Response to the Bankruptcy Discharge

BANA adheres to the Metro 2 Guide for accounts discharged in bankruptcy,
which provides that the following information should be reported to CRAs for such
accounts:

- CII [Consumer Information Indicator] = E or F (Discharged through [Bankruptcy] Chapter 7 or 11)
- Account Status = status at time of petition
- Payment History = increment first position with value 'D' (plus prior months' history)
- Current Balance = outstanding balance amount

---

[2] According to Defendant, Plaintiff's 56.1 Statement and the Petition incorrectly state the Account number as ending in 0066, and the Account actually ends in 6925.  *See* Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Def. Res. 56.1"), DE [51-1], ¶¶ 3, 14.  Plaintiff does not dispute or counter this assertion.  Therefore, the Court will consider the accounts ending in 0066 and 6925 to be one in the same, referred to herein as the Account.

4

- Scheduled Monthly Payment = amount of the scheduled monthly payment due
- Amount Past Due = amount past due at the time of petition
- Date of Account Information = current month's date

Note: After reporting the discharge CII E or F for all Filers, discontinue reporting the account.

Metro 2 Guide, BANA_Mateo 0437; *see* Def. 56.1 ¶¶ 22-23.   Defendant's Account Dispute Policies indicate that it should report the "Scheduled Monthly Payment" as $0 if an account was discharged in bankruptcy.  Def. 56.1 ¶ 21.

According to BANA, following notification that Mateo's bankruptcy case was discharged, on May 29, 2021 Defendant placed the "Bankruptcy Discharge Override Code 'E03'" on the Account, which stopped all furnishing of the Account to the CRAs. Def. 56.1 ¶ 18.  BANA also updated the "Consumer Information Indicator (CII)" field on Plaintiff's credit report to code "E" for "Discharged through Bankruptcy Chapter 7."  *Id.* (citing Def. 56.1, Ex. B, BANA_Mateo 0073 ("REPORT CREDIT BUREAU FLAG FROM CB OVERRIDE CODE TO N CB OVERRIDE CODE E03")).  Defendant affirms that it thereafter discontinued reporting the Account to the CRAs, Def. 56.1 ¶ 18, which Plaintiff disputes, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Motion ("Pl. Res. 56.1"), DE [53-1], ¶ 18.

According to Plaintiff, BANA did not report an "E" code in the CII filed until January 29, 2022 at the earliest.  *See id.* (citing Def. 56.1, Ex. B, BANA_Mateo 0070 ("UPDATED CONSUMER INFO INDICATOR TO E: DISCHARGED THROUGH")). Defendant also continued reporting the Account to the CRAs.  *Id.*

4.  Plaintiff's Post-Bankruptcy Disputes with CRAs

On July 7, 2021 and July 14, 2021, BANA received ACDV requests from CRAs in connection with the Account.  Def. 56.1 ¶¶ 19, 26.  The ACDVs contained a dispute code of "112: Customer states inaccurate information."  *Id.* ¶¶ 20, 26.  In response to the ACDVs, Defendant reported the CII field as "blank," since it had been previously updated to "E" for discharged in bankruptcy.  *Id.* ¶¶ 24, 28.  BANA reported no change in the Account Status field, which stated "97 (unpaid balance reported as a loss – charge off)" and reported the Amount Past Due and the Current Balance as $566.  *Id.* ¶¶ 24, 28.  Defendant indicated a blank field for the Scheduled Monthly Payment Amount.  *Id.* ¶¶ 25, 28.

Between September 2021 and June 2022, BANA received additional ACDVs from the CRAs with respect to the Account.  Specifically, on September 23, 2021, December 8, 2021, and January 14, 2022, Defendant received ACDVs with the dispute code "102: Account reaffirmed or not included in bankruptcy."  Def. 56.1, Ex. F, BANA_Mateo 0103-0105; 0109-0111; 0121-0123.  Further, on September 25, 2021, November 2, 2021, December 7, 2021, January 13, 2022, January 25, 2022, March 17, 2022, and June 22, 2022, BANA received ACDVs with the dispute code:  "106: Disputes present/previous account state/payment rating/account history."  *Id.*, BANA_Mateo 0094-0102; 0106-0108; 0112-0120.[3]  In response to each of these ACDVs, BANA reported either a blank or "E: Discharged through Bankruptcy

---

[3] The January 25, 2022 ACDV, under "FCRA Relevant Information," stated: "This account have [*sic*] report as bankruptcy and I don't have any bankruptcy on my Equifax [*sic*] please deleted [*sic*] this account from my credit report or I take a [*sic*] legal action."  Def. 56.1, Ex. F, BANA_Mateo 0100.

Chapter 7" in the CII field, an Account Status of "charged off," an Amount Past Due and Current Balance of $566, and a Scheduled Monthly Payment of $0.  *See id.*, BANA_Mateo 0094-0123.

On June 28, 2022, Defendant received an additional ACDV from TransUnion with the dispute code: "019: Included in the bankruptcy of another person." Def. 56.1, Ex. F, BANA_Mateo 0091; *see* Def. 56.1 ¶ 26.  In response, BANA reported "E: Discharged through Bankruptcy Chapter 7" in the CII field, an Amount Past Due and Current Balance of $566, and a blank in the "Scheduled Monthly Payment" field.  Def. 56.1, Ex. F, BANA_Mateo 0092.

According to Plaintiff, he checked his credit report on June 24, 2021, August 2, 2021, October 19, 2021 and November 27, 2021, and noticed that the Account was listed with "an outstanding balance and late payments."  Affidavit of Juan Mateo in Support of Plaintiff's Motion ("Mateo Aff."), DE [48-2], ¶¶ 11-14; *see* Pl. 56.1 ¶ 16.  On June 26, 2021, September 10, 2021, October 19, 2021, November 29, 2021, January 5, 2022 and February 27, 2022, Mateo disputed the accuracy of the information reported for the Account with Equifax.  Pl. 56.1 ¶¶ 18-27; *see* Pl. Mot., Ex. B (correspondence with Equifax dated Sept. 10, 2021, Oct. 19, 2021, Nov. 29, 2021 and Jan. 5, 2022).[4]  This correspondence does not mention Plaintiff's bankruptcy discharge but states "[the Account] is incorrectly reporting that I have 1 late

_____

[4] Mateo further affirms that he sent a dispute to Equifax regarding their failure to report his bankruptcy on January 21, 2021.  *See* Pl. 56.1 ¶ 17; Mateo Aff. ¶ 16.  Plaintiff's bankruptcy was not discharged, however, until May 12, 2021.  Pl. 56.1 ¶ 7.  Without further clarifying information, the Court will assume this was a typographical error and that Mateo initiated his first post-bankruptcy dispute with Equifax on June 26, 2021.

payments. [*sic*]  On my Transunion report there are 0 late payments being reported."
Pl. Mot., Ex. B, 2.  Mateo understood that BANA received notice of each of these
disputes.  Pl. 56.1 ¶ 28.  Plaintiff further affirms – but Defendant denies – that at an
unspecified time he contacted BANA by phone regarding his credit report and that
Defendant promised to "send a letter," but he never received one.  *Id.* ¶ 29.  According
to Mateo, the Account "was still reporting a balance" on or about March 24, 2022.  *Id.*
¶ 30.

On each of Mateo's credit reports dated August 2, 2021, September 10, 2021,
October 19, 2021, September 27, 2021 and May 16, 2022, Equifax reported a "Balance
Owed" of $566 on the Account, and indicated the "Payment Status" as
"Collection/Chargeoff" or "Unknown."  Pl. Mot., Ex. D, 7, 16-17, 29, 43, 62.  For each
credit report, Equifax reported the "Payment Amount" as $0.  *See id.*  On each of these
dates, TransUnion and Experian included a notation that the Account was included
in a Chapter 7 bankruptcy.  *See id.*

### 5.  Plaintiff's Damages

Mateo affirms that as a result of BANA's reporting that the Account had an
outstanding balance following his bankruptcy discharge, he has had difficulty
qualifying for new loans.  *See* Pl. 56.1 ¶ 58.  On May 16, 2022, Capital One denied
Plaintiff a new line of credit, and at an unspecified time, Onemain gave Mateo a
higher interest rate on a personal loan.  *Id.* ¶¶ 59-60.  Also at an unspecified time,
Plaintiff was unable to obtain a personal loan to buy a truck for his trucking business
or perform maintenance on his existing truck, and was therefore required to seek a

loan through his business at a higher interest rate. *Id.* ¶¶ 61, 63. Following his bankruptcy, Mateo was also denied an Apple credit card "due to 'delinquencies' including his Bank of America account" and was unable to obtain a home loan. *Id.* ¶¶ 65-66. Plaintiff does not submit any supporting documentation regarding these credit denials or higher interest rates. According to Mateo, he has suffered embarrassment, stress, anxiety and frustration as a result of Defendant's reporting of his Account. *See id.* ¶¶ 67-69.

### B. Procedural History

As stated above, Plaintiff commenced this action against Defendants by way of Complaint dated June 16, 2022, alleging willful and negligent violations of the FRCA. *See* Compl. On November 10, 2022 and November 18, 2022 respectively, Judge Azrack dismissed Equifax and Comenity as parties pursuant to stipulations of dismissal. *See* DEs [29] – [30]; Order Dismissing Parties dated Nov. 10, 2022; Order Dismissing Parties dated Nov. 18, 2022. Discovery proceeded as to BANA. *See* DEs [26], [31].

Following a premotion conference, Judge Azrack set a briefing schedule on the parties' cross-motions for summary judgment. *See* Electronic Order dated June 14, 2023. Judge Azrack also denied Defendant's request for a premotion conference on its proposed motion for judgment on the pleadings as untimely. *See* Electronic Order dated June 8, 2023. Plaintiff's Motion and Defendant's Motion were filed on September 29, 2023, *see* Pl. Mot.; Def. Mot. and referred to this Court for Report and Recommendation on April 16, 2024, *see* Order Referring Motions dated Apr. 16, 2024.

For the reasons set forth below, the Court concludes that Plaintiff's FCRA claims fail as a matter of law because: (1) Defendant furnished accurate information to the CRAs; (2) Mateo has failed to offer proof of actual damages; and (3) Plaintiff lacks standing to pursue a claim for willful violation of the FCRA. The Court therefore respectfully recommends that Plaintiff's Motion be denied, Defendant's Motion be granted, and Mateo's claims be dismissed.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as

to the material facts . . . .   [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").   In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III.   DISCUSSION

### A.   <u>The Fair Credit Reporting Act</u>

Plaintiff seeks summary judgment on his claims for negligent and willful violation of the FCRA, arguing that as a matter of law that:  (1)  Defendant's reporting of the Account was inaccurate; (2) BANA was notified of Plaintiff's disputes with the CRAs; (3) Defendant's investigation into Mateo's disputes was unreasonable; (4) Plaintiff has suffered damages as a result of Defendant's reporting; and (5) BANA's violation of the FCRA was willful.  *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion ("Pl. Mem."), DE [49], at 1-3.  BANA opposes Plaintiff's Motion and counters that it is entitled to summary judgment because:  (1) Defendant accurately

11

reported the Account; (2) BANA's investigation was reasonable; (3) Mateo has failed to offer evidence of his damages; and (4) Plaintiff has not shown that Defendant's conduct was willful. *See* Defendant's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion ("Def. Mem."), DE [52], at 1.

The FCRA "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681(b)). Further, "[a]s part of [its] regulatory scheme, [the FCRA] imposes several duties on those who furnish information to consumer reporting agencies." *Id.* (citing 15 U.S.C. § 1681s-2).

Pursuant to Section 1681s-2(b) of the FCRA, once a credit furnisher receives notice of a dispute regarding the completeness or accuracy of information from a consumer reporting agency, the FCRA requires credit furnishers to (1) conduct an investigation, (2) review all relevant information provided by the credit reporting agency, and (3) report the results of the investigation to the credit reporting agency. *See* 15 U.S.C. § 1681s-2(b).[5] Further, if the investigation results in a finding of an inaccuracy, the credit furnisher is required to report those results to all of the credit reporting agencies that it furnished the information to and correct the misinformation. *Id.* There is a private right of action for both willful and negligent non-compliance with Section 1681s-2(b). *See* 15 U.S.C. § 1681n (willful

_____

[5] The FCRA also requires credit reporting agencies to notify credit furnishers when information that they provided is being disputed. *See* 15 U.S.C. § 1681i(a)(2).

noncompliance); *id*. § 1681o (negligent noncompliance); *see Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) ("Although the Second Circuit has not directly addressed the issue, the majority of courts to address whether a private right of action exists for willful or negligent noncompliance with Section 1681s–2(b) have recognized one.") (citations omitted).

The adequacy of an investigation conducted pursuant to Section 1681s-2(b) is judged under a "reasonableness" standard. *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012) ("While the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have assumed a reasonableness standard for judging the adequacy of the required investigation.") (internal quotation marks and citation omitted).  Thus, in order to establish a claim under Section 1681s-2(b) of the FCRA ("Section 1681s-2(b) claim"), a plaintiff must demonstrate both that "(1) a [credit] furnisher received notice of a credit dispute from a [credit reporting agency] . . . and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148, 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019) (citing *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460, 2018 WL 1583289, at *6–7 (S.D.N.Y. Mar. 27, 2018), *appeal dismissed sub nom. Frederick v. Capital One Bank (USA) NA*, No. 18-2503, 2019 WL 4011476 (2d Cir. Feb. 27, 2019)).  Further, for a Section 1681s-2(b) claim to succeed, a plaintiff must be able to prove that the information reported was in fact inaccurate. *See Matheson v. Ocwen Fed. Bank FSB*, No. 05-CV-02747, 2008 WL 11413560, at *8

(E.D.N.Y. June 18, 2008) ("A prerequisite to any successful [FCRA] claim is, obviously, the ability of [Plaintiff] to offer proof that the information [credit furnisher Defendant] reported was inaccurate."). To succeed on its motion for summary judgment, Defendant "need only establish the absence of any genuine issue of material fact with respect to one of the required elements" of Mateo's claim. *Owoyemi v. Credit Corp. Sols. Inc.,* 677 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2023).

For the reasons set forth below, the Court concludes the Court concludes that Plaintiff's FCRA claims fail as a matter of law because: (1) Defendant furnished accurate information to the CRAs; (2) Mateo has failed to offer proof of actual damages; and (3) Plaintiff lacks standing to pursue a claim for willful violation of the FCRA. The Court therefore respectfully recommends that Plaintiff's Motion be denied, Defendant's Motion be granted, and Mateo's claims be dismissed.

### B. <u>Accuracy of BANA's Reporting</u>

Both Mateo and BANA argue that there is no genuine issue of material fact as to whether the information Defendant reported to the CRAs was accurate. As noted above, it is a prerequisite to an FCRA claim that the defendant furnisher reported inaccurate information to the CRAs. *See Matheson*, 2008 WL 11413560, at *8. Information is inaccurate under the statue if it "is patently incorrect, or if it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 120 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021) (internal citations and quotation marks omitted). To that end, the Court must consider Plaintiff's credit reports as a

whole. *See Deitsch v. Truist Bank*, No. 20-CV-06251, 2024 WL 22770, at *6 (E.D.N.Y. Jan. 2, 2024) (citing *Gross v. Private Nat'l Mortgage Acceptance Co., LLC,* 512 F. Supp. 3d 423, 427 (E.D.N.Y. 2021)).

In the context of bankruptcy discharge, at least one court in this Circuit has noted that, "a credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading." *In re Torres,* 367 F.R. 478, 487 (Bankr.S.D.N.Y. 2007) (denying motion to dismiss claim under Bankruptcy Code section 524(a) based on reporting of account discharged in bankruptcy as charged off). Courts outside the Second Circuit, however, have held that it is not inaccurate or misleading to report a historical balance or account status where the credit report otherwise indicates that the account in question was discharged in bankruptcy. *See, e.g., Ewert v. FC Holdings, LLC,* 513 F. Supp. 3d 1092, 1099 (W.D. Wis. 2021) (granting defendant's motion to dismiss where plaintiff's credit report listed payment status for a given account as "bankruptcy" but also included an outstanding balance of $2,066); *Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *5 (N.D. Ill. Aug. 19, 2016) (dismissing FCRA claim where bankruptcy status was omitted from a specific tradeline but was otherwise noted on plaintiff's credit report); *Connor v. JP Morgan Chase Bank, N.A.*, No. 15 C 8601, 2016 WL 7201189, at *3 (N.D. Ill. Mar. 22, 2016) (same).

Here, it is undisputed that BANA was aware that Plaintiff's debts – including the Account – were discharged in bankruptcy as of May 16, 2021. *See* Def. 56.1 ¶ 18. There is also no dispute, however, that Defendant accurately reported that the

Account was discharged in bankruptcy to the CRAs. For one, BANA's records reflect that it updated the CII field on Mateo's credit report to "E: Discharged through Bankruptcy Chapter 7" on May 29, 2021. *See* Def. 56.1, Ex. B, BANA_Mateo 0073. In addition, Defendant's responses to the ACDV requests from the CRAs reflect that the CII field for the Account read "E: Discharged through Bankruptcy" as early as September 2021. *See* Ex. Def. 56.1, Ex. F, BANA_Mateo 0122. Moreover, Plaintiff's Experian and TransUnion credit reports dated August 2, 2021, September 10, 2021, October 19, 2021, September 27, 2021 and May 16, 2022 date reflect that the Account was discharged in bankruptcy, a fact which Mateo does not dispute. Pl. Mot., Ex. D.

Plaintiff argues that the information BANA provided to the CRAs is nonetheless inaccurate or misleading because it continued to report the Account Status as "charged off" and a balance owed on the Account. *See* Pl. Mem. at 9-15. The Court is unpersuaded. The caselaw Mateo cites as support for this proposition is largely distinguishable because in those cases there was no indication that the furnisher also reported that the debt at issue was discharged in bankruptcy, as is the case here. *See, e.g., Carrasco v. Bank of Am.,* No. 20-cv-5833-JST, 2022 WL 20242801, at *3 (N.D. Cal. Apr. 22, 2022) (denying defendant's motion to dismiss where furnisher reported debt discharged in bankruptcy had a balance without also noting bankruptcy)*; Montgomery v. Wells Fargo Bank,* No. C12-3895 THE 2012 WL 5497950, at *5 (N.D. Cal. Nov. 13, 2012) (same).[6]  Mateo further contends that Defendant

---

[6] Other cases cited by Plaintiff are also factually distinguishable. *See Mader v. Experian Info. Sols., Inc.,* 56 F.4th 264, 271 (2d Cir. 2023) (holding it was not inaccurate for Experian to omit bankruptcy in reporting of student loan debt where it is unclear whether student loans are included in a Chapter 7 bankruptcy as a matter of law); *Horsch v. Wells Fargo Home Mortg.,* 94 F. Supp. 3d 665, 677 (E.D.

updated the CII to reflect Plaintiff's bankruptcy for the first time in January 2022. *See* Pl. Res. 56.1 ¶ 18. This conclusory assertion, however, is contradicted by BANA's records as well as the Experian and TransUnion credit reports. *See* Def. 56.1, Ex. B & F (ACDV responses); *see* Pl. Mot., Ex. D (Plaintiff's credit reports).

In sum, the uncontradicted record reflects that Defendant simultaneously reported that Plaintiff's Account was discharged through a Chapter 7 bankruptcy and that the balance was previously charged off. Viewing BANA's reporting as a whole, the Court concludes that the information was accurate as a matter of law. *See Ewert,* 513 F. Supp. 3d at 1099 (concluding plaintiff's FCRA claim failed as a matter of law).[7] Given that Mateo has failed to make a threshold showing that Defendant's reporting was inaccurate or misleading, Plaintiff's FCRA claims fail. Notwithstanding this conclusion, and for the sake of completeness, the Court next considers whether either party is entitled to summary judgment on the remaining elements of Mateo's claims.

## C. <u>Reasonableness of Defendant's Investigation</u>

Assuming the information reported to a CRA is inaccurate, to establish an FCRA claim, Plaintiff must next prove that he disputed the information on his credit report with a CRA, and that Defendant failed to conduct a reasonable investigation

---

Pa. 2015) (finding credit report accurate where furnisher failed to report mortgage payments made after bankruptcy).

[7] Defendant argues that its reporting was accurate because it comported with the Metro 2 Guide. *See* Def. Mem. at 10. Although the Second Circuit has not considered the issue, other courts have noted that the Metro 2 Guide does not establish the standards of accuracy under the FCRA. *See Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *9 (N.D. Cal. Dec. 20, 2017); *Hupfauer*, 2016 WL 4506798, at *4, n. 5. As such, this Report and Recommendation should not be construed to indicate that BANA's reporting was accurate based on its compliance with the Metro 2 Guide alone.

in response. *See Frederick*, 2018 WL 1583289, at *6. As noted above, while the Second Circuit has not decided "the specific contours" of a furnisher's duties, courts have assumed an objective reasonableness standard applies. *See Dickman,* 876 F. Supp. 2d at 172. The Court analyzes the reasonableness of the furnisher's response "'in light of what the furnisher learned about the nature of the dispute from the description in the CRA's notice of dispute.'" *Rubin v. HSBC Bank USA, NA*, No. 20-CV-4566 (FB), 2024 WL 649916, at *3 (E.D.N.Y. Feb. 16, 2024) (quoting *Frederick,* 2018 WL 1583289, at *7). The question of reasonableness is generally a question of fact for the jury. *See Rubin,* 2024 WL 649916, at *3. "Further, an investigation will not be deemed sufficient without at least some evidence of what the investigation actually entailed." *Owoyemi,* 677 F. Supp. 3d at 295.

Here, there is no dispute that BANA received notice of Mateo's dispute with the CRAs regarding the Account. Although the ACDVs Defendant received contained various dispute codes – some of which referred to bankruptcy and others which did not – both parties agree that on January 25, 2022, the ACDV report included a note from Plaintiff that the Account was included in his bankruptcy and should be reported as such. *See* Def. 56.1, Ex. F, BANA_Mateo 0100; Def. Mem. at 13. BANA was therefore on notice of Mateo's specific dispute as of January 2022.

There are issues of material fact, however, that preclude summary judgment on the issue of the reasonableness of Defendant's investigation. Apart from reiterating that BANA continued to report inaccurate information regarding the Account, Mateo has not submitted any evidence that Defendant did not conduct a

18

reasonable investigation.[8]  On the other hand, BANA has not provided details about its investigation into the Account.  Instead, Defendant asserts that in response to each ACDV, it "verified that each item listed on the credit report matched the Account records" and that "[e]ach investigation revealed that BANA was reporting accurate information." Def. Mem. at 13-14.  Absent further evidence, such as details regarding what records were reviewed or testimony from an employee involved in the investigation, the Court cannot conclude that Defendant's investigation was reasonable as a matter of law.  *See Owoyemi,* 677 F. Supp. 3d at 299-300 (denying defendant's motion for summary judgment on issue of reasonableness where defendant stated only that it "verified the Account information"); *Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14-cv-5687, 2017 WL 1325369, at *7 (E.D.N.Y. Feb. 14, 2017) (denying defendant's summary judgment motion where defendant did not offer evidence of what steps were taken to investigate and respond to plaintiff's dispute); *Dickman*, 876 F. Supp. 2d at 173 (noting ACDVs alone were insufficient to demonstrate reasonableness of furnisher's investigation).  Accordingly, the Court determines that neither party is entitled to summary judgment on the issue of the reasonableness of Defendant's investigation.  As noted above, however, BANA need

---

[8] Mateo argues that because BANA failed to respond to Plaintiff's Requests for Admissions ("RFAs") within 30 days of service, the facts contained therein should be deemed admitted, including, *inter alia,* that Defendant failed to perform a reasonable investigation into Plaintiff's dispute.  *See* Pl. Mem. at 8-9.  Plaintiff's RFAs were served on September 21, 2022 and Defendant responded on November 31, 2022.  Fed. R. Civ. P. 36(a)(3) provides that RFAs must be responded to within 30 days, unless otherwise ordered by the Court.  Fed. R. Civ. P. 36(a)(3).  Via a Scheduling Order, this Court set a deadline of December 1, 2022 to respond to document demands and interrogatories.  *See* DE [27].  RFAs are generally treated as discovery devices subject to the same deadlines as document demands and interrogatories, *see Joseph L. v. Connecticut Dept. of Children and Families*, 225 F.R.D. 400 (D. Conn. 2005), and Mateo has submitted no caselaw to the contrary.  Accordingly, the Court will not deem Plaintiff's RFAs admitted by Defendant.

only demonstrate that summary judgment is warranted on one element of Mateo's claims to prevail.

### D. Negligent Noncompliance – Actual Damages

In any event, Plaintiff's claim for negligent violation of the FCRA fails for an independent reason – Mateo fails to offer evidence of his actual damages. To establish an FCRA claim, "a plaintiff must prove his entitlement to damages under either a negligence or willfulness theory." *Severini v. Pennsylvania Higher Educ. Assistance Agency*, No. 18CV2775 (ER), 2020 WL 1467396, at *6 (S.D.N.Y. Mar. 25, 2020) (citing *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 471 (2d Cir. 1995)). Under a negligence theory, a plaintiff must establish actual damages "attributable to defendants' unreasonable investigation." *Okocha v. HSBC Bank USA, N.A.*, No. 08-cv-8650, 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010). To that end, a plaintiff must "present evidence of a casual relation between the violation of the statue and the loss of credit, or some other harm." *Burns v. Bank of Am.,* 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008) (internal quotation marks omitted).

Here, Mateo asserts that he was denied credit and offered credit at higher interest rates as a result of BANA's reporting of the Account. *See* Pl. 56.1 ¶¶ 58-66. Plaintiff, however, submits no supporting documentation regarding these alleged instances apart from his own affidavit, and plaintiff's testimony alone is "insufficient to avoid summary judgment on an issue as to which [Mateo] bear[s] the ultimate burden of proof." *Burns,* 655 F. Supp. 2d at 250 (internal quotation marks omitted) (granting summary judgment for defendant where evidence of damages was limited

to plaintiffs' deposition testimony); *Caltabiano v. BSB Bank & Tr. Co.,* 387 F. Supp. 2d 135, 142 (E.D.N.Y. 2005) (granting summary judgment for defendants because actual injury cannot be based on plaintiff's "subjective testimony alone"). Moreover, Plaintiff has failed to offer evidence of any casual link between the alleged credit denials and the information Defendant reported regarding the Account. *See Burns,* 655 F. Supp. 2d at 251. Lastly, although Mateo claims to have suffered emotional distress and embarrassment, such conclusory allegations, without more, are insufficient to recover emotional distress damages under the FCRA. *See id.* Accordingly, the Court concludes that Plaintiff has failed to demonstrate actual damages necessary to recover on his claim for negligent violation of the FCRA.

### E. **Willful Noncompliance - Standing**

Mateo's claim for willful noncompliance with the FCRA also fails. On such a claim, a plaintiff may recover statutory and punitive damages without a showing of actual damages. *Suluki v. Credit One Bank, NA*, 666 F. Supp. 3d 403, 413 (S.D.N.Y. 2023). The Supreme Court has held, however, that under the principles of Article III standing, a plaintiff must demonstrate the existence of a concrete harm in order to pursue a claim for a willful violation of the FCRA. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427, 141 S. Ct. 2190, 2205 (2021) ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."). Plaintiff has failed to do so, and his willful noncompliance claim therefore falls short.

As a general matter, to maintain Article III standing, a plaintiff must establish: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Doe v. McSweeney*, No. 21-cv-2191, 2022 WL 1451383, at \*1 (2d Cir. May 9, 2022) (quoting *TransUnion*, 594 U.S. at 423, 141 S. Ct. at 2203); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992). A plaintiff alleging an actionable injury in fact must establish "an invasion of a legally protected interest," and the injury must be: "(1) 'concrete and particularized'; and (2) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2130; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548.

"Particularized" injuries "affect the plaintiff in a personal and individual way[,]" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442-43 (2d Cir. 2022) (internal quotation marks omitted), while concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 427, 141 S. Ct. at 2206. Moreover, the Supreme Court recently clarified that a plaintiff "has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself." *Harty*, 28 F.4th at 442-43 (citing *TransUnion*, 594 U.S. at 424-30, 141 S. Ct. at 2204-07; *Maddox v. Bank of New York Mellon Tr. Co.*, N.A., 19 F.4th 58, 63-64 (2d Cir. 2021)).

In the context of FCRA claims, the Supreme Court has held that even where Congress created a private right of action to pursue a statutory violation in federal court, Article III standing nevertheless requires a concrete injury. *See Spokeo,* 578 U.S. at 341, 136 S. Ct. at 1549. To that end, courts have held that denials of credit and reputational damage are concrete injuries sufficient to confer standing on FCRA claims. *See Tescher v. Experian Info. Sols., Inc.,* No. 21-CV-02266 (PMH), 2022 WL 564048, at *5 (S.D.N.Y. Feb. 23, 2022) (alleged denials of credit based on inaccuracies in credit report sufficient to plead injury-in-fact); *TransUnion,* 594 U.S. at 433, 141 S. Ct. 2209 (reputational harm caused by inaccuracies in credit report shared with third parties constitutes injury-in-fact). The mere presence of an inaccuracy on a credit report – absent evidence it was disclosed to a third party, however, – is insufficient to establish concrete harm. *TransUnion*, 594 U.S. at 434, 141 S. Ct. at 2210 ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm.").

Here, as noted above, Mateo has not provided evidence – apart from his own affidavit – that he suffered a denial of credit, higher interest rates, embarrassment, or emotional distress as a result of the purported inaccuracies on his credit report. *See* Sec. III.D., *supra.* Moreover, there is no evidence in the record that Plaintiff's credit report was ever provided to a third party. As a result, the only remaining injury is the existence of the alleged inaccuracy on Mateo's credit report, which is insufficient to confer Article III standing. *See TransUnion,* 594 U.S. at 434, 141 S. Ct. at 2210 (concluding plaintiffs lacked standing where there was no evidence credit

report was shared with third parties). Accordingly, Plaintiff's claim for willful violation of the FCRA fails as a matter of law.

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff's FCRA claims fail as a matter of law because: (1) Defendant furnished accurate information to the CRAs; (2) Mateo has failed to offer proof of actual damages; and (3) Plaintiff lacks standing to pursue a claim for willful violation of the FCRA. The Court therefore respectfully recommends that Plaintiff's Motion be denied, Defendant's Motion be granted, and Mateo's claims be dismissed.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            June 14, 2024

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge